UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADDISON MARK JASON
RICE, SR.,

       Plaintiff,

v.                               Case No.:  8:23-cv-02639-CEH-NHA

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT & RECOMMENDATION

       Plaintiff challenges the June 27, 2022 denial of his claim for disability insurance benefits ("DIB"). Plaintiff argues that the Administrative Law Judge ("ALJ") erred in (1) failing to address whether Plaintiff's migraine condition, which the ALJ found to be a severe impairment, was medically equivalent to any impairment listed as *per se* disabling in the CFR, and in (2) determining that Plaintiff's remaining capabilities—also called his residual functional capacity, or "RFC"—were not hampered by limitations related to his light sensitivity or his need for time off-task and absenteeism. Doc. 18. Having reviewed the parties' briefing and the record below, I recommend that this matter be remanded for further findings by the ALJ. Specifically, I recommend that the ALJ be given the opportunity to consider whether Plaintiff's migraine

1

condition was medically equivalent to Listing 11.02, and to explain whether the ALJ considered, and on what basis he omitted from the RFC assessment, Plaintiff's alleged light sensitivity.

## I. Procedural History

Plaintiff applied for DIB on September 2, 2020. R. 258. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. R. 84, 110. Plaintiff then requested an administrative hearing. R. 160. The ALJ conducted a hearing on June 2, 2022, at which Plaintiff appeared and testified. R. 46–64. Following the hearing, the ALJ found that Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 10–23.

Specifically, following the five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)), at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, February 5, 2020. R. 13. At Step Two, the ALJ found that Plaintiff did have severe impairments, specifically, migraine headaches, depression, and anxiety. R. 13. Notwithstanding the noted impairments, at Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13–14. Notably, at Step Three, the ALJ stated that he "ha[d] carefully considered

the specific requirements of the relevant listings and [wa]s satisfied that no listing [wa]s met or equaled"; however, he only expressly considered the criteria in Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). R. 14.

In Step Four, the ALJ determined that, notwithstanding his limitations, Plaintiff retained the following abilities, known as his RFC: Plaintiff could perform light work,[1] with certain modifications, specifically, Plaintiff could frequently lift up to 10 pounds but only occasionally lift up to 20 pounds, could stand, walk, and sit for up to 6 hours in an 8-hour workday, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. R. 16. Plaintiff needed to avoid loud noise, vibration, hazardous machinery and heights. *Id.* Plaintiff was limited to work comprising routine and repetitive instructions and tasks, without specific production rate or pace (as would be required in assembly lines), with only occasional interaction with the public, coworkers, and supervisors. *Id.* And, Plaintiff would need standard morning, lunch, and

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. 404.1567(b)

afternoon breaks, but could otherwise maintain attention and concentrate for two hours at a time. *Id.*

While the ALJ concluded—relying in part on the testimony of a vocational expert—that Plaintiff could not perform his past relevant work (R. 21), he found that Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of marker, collator operator, and router. R. 22. Accordingly, based on Plaintiff's age, education, work experience, and RFC, and the testimony of a vocational expert, the ALJ found Plaintiff was not disabled. *Id.*

Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied it. R. 1–6. Plaintiff then timely filed a complaint with this Court seeking reversal of the opinion. Compl. (Doc. 1). Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's migraine condition was medically equivalent to the *per se* disabling impairment in Listing 11.02, and by failing to include in Plaintiff's RFC limitations associated with Plaintiff's light sensitivity and need to be absent or off-task. Doc. 18. The Commissioner responded (Doc. 20), and Plaintiff filed a reply (Doc. 21). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    The Record

Plaintiff, who was born in 1990, did not complete high school and previously worked as a furniture assembler, construction worker, service

technician, and delivery driver. R. 52–55, 61, 258, 289. Plaintiff claims he became disabled on February 5, 2020, when he stopped working due to his migraines and mental health conditions (bi-polar disorder, depression, and anxiety). R. 288.

A.  Plaintiff's Reported Migraine Symptoms

Plaintiff reported that he woke up most days with a migraine headache which he would rate "about a 3" on a 10-point scale. R. 56, 319 (reporting daily migraine pain), 351 (same). But the pain increased as the day went on. R. 56. Plaintiff would become sensitive to light and sound. R. 56, 303 (his girlfriend reporting that looking at screens exacerbated his headaches); 318 (reporting sensitivity to light). Additionally, his vision blurred and he saw auras, and felt nauseated, lightheaded, and dizzy. R. 56, 318 ("sometimes distorts my vision" and "makes me nauseous [and] lightheaded"). During his migraines, he would lie in bed in complete silence and darkness for eight to sixteen hours, incapacitated and unable to get up even to use the restroom. R. 56; see also R. 300 (his girlfriend reporting that he would lie down most of the day, although he was sometimes able to watch a movie). He testified that, as a result of his migraines, he could not safely drive, did not assist with the household chores, and left the house only for doctor appointments. R. 59–60; *see also* R. 300 (his girlfriend also reporting that he only left for doctor appointments). His near-

daily headaches sometimes intensified further, and three to four times a month, he experienced vertigo for a few hours. R. 57–58.

And, although Plaintiff was prescribed different medications (including Ubrelvy, Sumatriptin, Emgality, Rizatriptan, and Lamotrigine) and tried other treatments for his migraines (including Botox and B-12 supplements), he reported that only one treatment—Sumatriptin—had any effect. R. 57, 351. Sumatriptin lessened the pain from an 8 to a 4, 5, or 6 on the 10-point scale. R. 57; *see also* R. 319 ("usually helps relieve the pressure . . . but it doesn't fully take my pain away").

### B. Medical Records Relating to Plaintiff's Migraines

Plaintiff has suffered from headaches since he was a child. R. 409, 422. He consistently reported to his medical providers that, during his migraines, he suffered from sensitivity to light (i.e., photophobia) and vision impairment (e.g., blurred vision, white spots in vision). R. 422, 559, 712. As a result, he endured his migraines in complete darkness. R. 559, 827. Additionally, Plaintiff reported to his providers that his headache pain made him unable to focus, remember, and process information. See, e.g., R. 709, 806.

Records from the period for which Plaintiff claimed he was disabled show that he suffered from worsening migraines in June 2020. R. 431. At that time, Plaintiff took Sumatriptan for his migraines, but its success varied. R. 431 (only mildly improved pain in June 2020), 498 ("really helps" in July 2020), R.

6

506 (no longer works in December 2020). He was also then prescribed a nasal spray (R. 507), but Plaintiff did not try it (R. 559).

In January 2021, Plaintiff began seeing neurologist Mark Armanious. R. 558–59. Dr. Armanious's notes reflect that Plaintiff suffered from headaches every day, which usually lasted more than four hours, and varied from moderate to severe. R. 558–59. Dr. Armanious prescribed him Emgality, Maxalt, and Naxproxan, and advised him to stop taking Sumatriptan and Fioricet. R. 565. Although the new medications initially appeared to work (R. 735), approximately two months later, Plaintiff reported that they did not. R. 672. Rather, Dr. Armanious noted that Plaintiff still experienced headaches every day that lasted at least four hours, were associated with nausea, occasional vomiting, blurred vision and aura, and sensitivity to light, sound, and smell, and that caused Plaintiff to avoid light and activity. R. 672–73. Dr. Armanious adjusted Plaintiff's medication. R. 806 (Plaintiff to remain on Emgality, stop Maxalt, and start Axert). In October 2021, at another follow-up visit, Dr. Armanious noted no significant change in Plaintiff's migraines, which still occurred daily (and were severe three or four times a week). R. 806. Dr. Armanious suggested that Plaintiff try Botox, along with other new medications. R. 813, 815.

7

Plaintiff received Botox injections in January and February 2022. R. 824, 827. However, the Botox—and new medications—did not work, and Plaintiff asked to re-start the Sumatriptan. R. 827.

### C. The ALJ's Consideration and Treatment of Plaintiff's Migraines

At Step Two of the ALJ's sequential evaluation, the ALJ found that Plaintiff's migraine headaches were a severe impairment. R. 13. At Step Three—in which an ALJ considers whether a claimant's impairments medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, Appendix 1—the ALJ explicitly considered whether Plaintiff's conditions medically equaled the listed criteria for depression/bipolar disorder (12.04) and anxiety (12.06). R. 14–15. The ALJ did not specifically consider whether Plaintiff's migraines medically equaled the *per se* impairment in Listing 11.02, the appropriate comparator when evaluating migraines (SSR 19-4p). See R. 14–16.

In Step Four, in determining Plaintiff's residual functional capacity, the ALJ explicitly referenced Plaintiff's complaints about the limitations caused by his migraines, noting Plaintiff "reported that his migraine headaches caused sensitivity to light and touch, lightheadedness, and sometimes distorted his vision" and, therefore, limited his daily living activities. R. 17. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but "the intensity,

8

persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 17–18.

Concerning Plaintiff's migraines, the ALJ first referenced Plaintiff's visit to a neurologist in February 2019 (i.e., prior to the period in which Plaintiff claims he was disabled) in which Plaintiff reported that his "almost daily" headaches were resolved "100 percent of the time" with Imitrex. R. 18 (also referencing another medical visit prior to Plaintiff's alleged disability in which Plaintiff reported that Sumatriptan worked well for his migraines). The ALJ next mentioned that Plaintiff complained of "worsening headaches" in 2020 and sought treatment from a different neurologist. *Id.* But, the ALJ noted that Plaintiff failed to follow a medical regiment prescribed by that neurologist. *Id.*

Finally, the ALJ discussed Plaintiff's visits with Dr. Armanous throughout 2021 and 2022. R. 18–19. The ALJ noted that Plaintiff's headaches were "still present but not as terrible" in January 2021; he also noted that Plaintiff "report[ed] poor control of his headaches" in April and October 2021, and that Plaintiff reported at the June 2022 hearing that the Botox administered by Dr. Armanious had not worked. *Id.* But the ALJ never discussed Dr. Armanious's notes regarding the frequency, severity, and effects of Plaintiff's headaches. *See id.*

9

The ALJ asked a vocational expert what jobs a hypothetical person with certain characteristics and limitations could perform. Some of the posited limitations appeared to resemble those associated with Plaintiff's migraines. Specifically, the ALJ's hypothetical person needed to "avoid loud noise, vibration, . . . and heights," to avoid work "requiring a specific rate or pace," to have "only routine and repetitive instructions and tasks," and to "maintain attention and concentration for [no more than] two hours at a time." R. 62. The ALJ later determined that the hypothetical abilities and limitations matched Plaintiff's RFC. R. 16. Of note, the ALJ failed to include in the hypothetical or in Plaintiff's RFC any limitations related to light exposure. See R. 16, 62.

### III.   Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no such deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is de novo."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he

employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Thus, in evaluating whether the ALJ followed the legal standard at Step Three of the sequential evaluation process, the Court must be able to determine if the ALJ considered whether a claimant's impairments met each relevant listing. *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011). Nonetheless, there is no requirement that the ALJ cite by number each listing he considered. *Id.*

In making its decision, the Court must review the entire record. *Id.* at 1514; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV. Analysis

### A. It is not clear if the ALJ considered whether Plaintiff's migraines medically equaled the *per se* disability in Listing 11.02.

Plaintiff first argues that the ALJ committed legal error by failing to evaluate, in Step Three, whether Plaintiff's migraines medically equaled Listing 11.02. Pl. Br. (Doc. 18), at p. 5. Defendant does not dispute that the ALJ failed to mention Listing 11.02 but argues that "the component parts [of the analysis] are in the decision" and, in any event, the record supports a finding that Plaintiff did not meet the listing. Def. Br. (Doc. 20), at p. 6.

11

At Step Three of the sequential evaluation process, an ALJ consults the Listing of Impairments, which describes impairments severe enough to preclude a person from any gainful activity regardless of age, education, or prior work experience. *See* 20 C.F.R. § 404.1525(a). The ALJ then considers whether claimant's limitations are equal in severity and duration to those in any Listing. *See* 20 C.F.R. § 404.1526.

At Step Three, while the ALJ must consider whether a claimant's impairments meet each relevant listing, there is no requirement that the ALJ cite by number each listing he considered. *Gray*, 454 F. App'x at 750 (affirming an ALJ's decision when it failed to explicitly cite the relevant listing). Moreover, the ALJ need not "mechanically recite the evidence leading to his ultimate determination." *Id.* (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Rather, "[a] finding that a claimant's impairments are not contained in the Listings may be implied from the ALJ's decision." *Gray*, 454 F. App'x at 750; *see also Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 971 (11th Cir. 2014) (finding "meritless" an argument that an ALJ was required to "make detailed findings or explicitly discuss whether his impairments met or equaled [a specific Listing]" because "the ALJ's conclusion that [the claimant] did not meet that specific listing can be implied from the ALJ's discussion of [the claimant's] medical evidence . . . and his general conclusion that [the claimant] did not meet any medical listing").

Thus, the ALJ did not err merely by failing to cite Listing 11.02. The question is whether the ALJ included enough information in his decision for the Court to infer that he considered whether Plaintiff's migraines met the relevant listing.

Migraine headaches are not a condition in the Listing of Impairments. SSR 19-4p. Nonetheless, the Social Security Regulations recognize that a headache disorder may medically equal a listed impairment. *Id.* The regulations direct an ALJ to consider whether a person's migraines are medically as severe as disabling epilepsy, as described in Listing 11.02, which the Regulations consider the most closely analogous listed impairment. *Id.*

A migraine impairment can be functionally equivalent to Listing 11.02B if severe headaches or migraines occur "at least once a week for three consecutive months despite adherence to prescribed treatment." "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the ALJ will] consider: a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may

13

be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4p.

In sum, in order for the Court to conclude that the ALJ properly considered—and rejected—Plaintiff's claim that his migraines met Listing 11.02B, the Court must find that the ALJ considered (1) a medical source's description of Plaintiff's migraines, including their duration, intensity, and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to his prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's with activity during the day. SSR 19-4p.

I find the ALJ's decision does not reveal that he considered whether Plaintiff's migraines medically equaled Listing 11.02B. The decision contains no discussion of a medical source's description of the migraines during the period for which Plaintiff claimed disability, as required by SSR 19-4p. *See* R. 16–19. Additionally, the decision fails to mention of the frequency of Plaintiff's migraines during the period for which Plaintiff claimed disability and side effects of the treatment, if any. *See id*. It does appear that the ALJ considered

14

Plaintiff's compliance with medical treatment, as well as Plaintiff's and his girlfriend's subjective reports about how the migraines impacted his activities of daily living. R. 17–19. However, because the ALJ's decision does not reference information that the social security regulations require the ALJ to consider in determining whether Plaintiff's condition met Listing 11.02B, I cannot infer from the ALJ's decision that the ALJ properly considered whether Plaintiff met Listing 11.02B before finding that he did not.

Alternatively, a migraine impairment can be functionally equivalent to Listing 11.02D when migraines occur "at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment," and "the overall effects of the primary headache disorder on functioning results in marked[2] limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." SSR 19-4p.

Thus, in evaluating medical equivalence to Listing 11.02D, an ALJ must consider (1) the frequency which with a plaintiff's migraines occurred, (2) whether a plaintiff adhered to his prescribed treatment, and (3) whether the

---

[2] A "marked" limitation means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Listing 12.00. A "marked" limitation is more severe than a "moderate limitation," which means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

migraines caused the plaintiff to have a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id.*

As with listing 11.02B, I find that the ALJ's decision does not contain enough information to demonstrate that he considered whether Plaintiff's migraines medically equaled the Listing 11.02D. The ALJ did consider Plaintiff's adherence to treatment and Plaintiff's migraine-related limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 14–15, 17–19. However, the decision does not address the frequency of Plaintiff's migraines when Plaintiff took medication, during the period for which Plaintiff claimed disability, which is required by Listing 11.02D. *See* R. 16–19.

I find that the ALJ's opinion does not contain sufficient information to conclude that he properly analyzed Plaintiff's migraines in light of Listing 11.02.[3]

---

[3] The omission of any explicit reference to Listing 11.02 or to the criteria therein appears particularly meaningful, given that the ALJ explicitly considered whether Plaintiff's impairments medically equaled two other listings (for depression/bipolar disorder (12.04) and anxiety (12.06)) and walked through the criteria for each.

Defendant argues that, even if the ALJ did not expressly (or perhaps even impliedly) consider Listing 11.02, his other findings demonstrate that remand for such consideration would be futile. That is, the government suggests that the ALJ's opinion contains findings that, if applied to the 11.02 analysis, would support rejection of it. Def. Br. (Doc. 20), at p. 6. While this argument may have merit as to Listing 11.02D,[4] the record may have supported—though did not require—a conclusion that Plaintiff's migraines met Listing 11.02B. Again, a migraine impairment can be functionally equivalent to Listing 11.02B where severe headaches or migraines occur "at least once a week for three consecutive months despite adherence to prescribed treatment." Here, after treating Plaintiff for nine months, Dr. Armanious noted that Plaintiff was still experiencing severe migraines 3–4 times per week that lasted for at least 4 hours, and were associated with sensitivity to light, sound, nausea, and difficulty with completing tasks, remembering, and concentrating. R. 806.

---

[4] In considering whether Plaintiff met the listings for depression/bipolar disorder (12.04) and anxiety (12.06), the ALJ appears to have considered Plaintiff's migraine-related limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, as the ALJ referenced records from Plaintiff's neurologists. R. 14–15. Of note, the ALJ did not find any "marked" limitations, which are required to meet Listing 11.02D.

Thus, contrary to Defendant's argument, I cannot conclude that the ALJ's failure to consider Listing 11.02B was harmless.

B. <u>It is not clear whether the ALJ accounted for Plaintiff's sensitivity to light in developing Plaintiff's RFC.</u>

Plaintiff additionally argues that the ALJ erred at Step Four by failing to include in Plaintiff's RFC a limitation relating to his light sensitivity or to otherwise explain why such a limitation was not included. Pl. Br. (Doc. 18), at p. 22. Defendant argues that the ALJ clearly considered Plaintiff's light sensitivity, because he mentioned it in his decision; rather, Plaintiff simply did not meet his burden of showing that he required limitations related to it. Def. Br. (Doc. 20) at p. 10.

An RFC is the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess the RFC based on "all of the relevant medical and other evidence," including but not limited to, "descriptions and observations of [a claimant's] limitations," as described by the claimant. *Id.* § 404.1545(a)(3).

An ALJ must consider all relevant record evidence. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And, in forming the RFC, an ALJ may discredit a claimant's subjective complaints. *Moore v. Barnhart*, 405 F.3d 1208,

1212–13 (11th Cir. 2005). However, the ALJ must articulate "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ states that he "considered all symptoms" when assessing Plaintiff's RFC. R. 16. Moreover, as Defendant points out, the ALJ specifically referenced Plaintiff's complaints about light sensitivity, noting Plaintiff "reported that his migraine headaches caused sensitivity to light and touch, lightheadedness, and sometimes distorted his vision." R. 17.

The ALJ ultimately included in the RFC other limitations related to Plaintiff's migraines, including environmental limitations ("avoid loud noise, vibration") and limits on memory, understanding, pace, and concentration ("cannot perform work requiring a specific rate or pace," "can maintain attention and concentration for two hours at a time," and "can understand, remember, and carry out only routine and repetitive instructions and tasks"). R. 16. But he included no limitation related to Plaintiff's photophobia. *See id.*

It may be that the ALJ did not include a light-sensitivity limitation in the RFC, because he found Plaintiff's report of this specific symptom inconsistent with the record. To be clear, the ALJ did make a broad finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record . . . ." R. 17–18. As to the light sensitivity specifically, however, the ALJ offers no support for such a conclusion.

Thus, it is not clear from the opinion whether or why the ALJ would have dismissed Plaintiff's report that he was sensitive to bright lights, while crediting Plaintiff's report of other migraine-related limitations. *See* R. 16. The ALJ was free to discredit Plaintiff's reported symptoms, he but erred in omitting from his opinion "explicit and adequate reasons for doing so." *See Wilson*, 284 F.3d at 1225.

I recommend that the Court remand to allow the ALJ to explicitly explain whether or how he considered Plaintiff's alleged light exposure limitation.[5]

---

[5] Plaintiff also makes a cursory argument that the ALJ erred at Step Four when he found medical opinions that Plaintiff was "moderately limited" in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without a reasonable number and length of rest periods" to be "persuasive" but failed to incorporate absenteeism or time-off task limitations. Pl. Br. (Doc. 18) at p. 23. But, the medical opinions concluded that, despite Plaintiff's moderate limitation in his ability to complete a normal workday, Plaintiff did not need any accommodation for absenteeism or time-off task in his RFC. R. 80, 106. Rather, to accommodate the moderate limitation in his ability to complete a normal workday, the medical opinions recommended that Plaintiff be limited to simple and routine work, as he was able to "execute/complete simple, routine (vs. complex) occupational tasks at a reasonable pace under normal supervision." R. 80, 106. And, the ALJ incorporated those proposed limitations in the RFC. R. (16) (including in RFC

## V.    Conclusion

For the reasons stated, I respectfully RECOMMEND that:

(1)    The case be remanded to the Social Security Administration to allow the ALJ to make explicit his findings as to:

>    (a) Whether Plaintiff's migraine condition is medially as severe as Listing 11.02; and

>    (b) Whether Plaintiff requires a limitation to accommodate his reported photophobia; and

(2)    The Clerk of Court be directed to enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

SUBMITTED for the District Court's consideration on November 20, 2024.


*Natalie Hirt Adams*

NATALIE HIRT ADAMS
United States Magistrate Judge


NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's

---

that Plaintiff "can understand, remember, and carry out routine and repetitive instructions and tasks; cannot perform work requiring a specific production rate or pace"). Thus, this argument lacks merit.

failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.